The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* WILLIAM HEYER (No. 4444)[1]

---
[1] C. A. D. 259.

United States Court of Customs and Patent Appeals, November 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney, of counsel), for the United States.

*John F. Reddy, Jr.* for appellee.

[Oral argument October 6, 1943, by Mr. Donohue and Mr. Reddy]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding, in substance, although not in form, that the assessment of duties by the collector at the Port of New York against an importation of merchandise, consisting of two circus horses, at 20 per centum ad valorem under paragraph 714 of the Tariff Act of 1930, was illegal and void because the horses had not been legally appraised.

It appears from the record that the horses were originally entered for exhibition purposes, and, in accordance with paragraph 1747 of the Tariff Act of 1930, were admitted free of duty upon the exe-

cution of a bond for the payment of duties in the event they were not exported within 6 months after their importation. The horses were not exported within the 6-month period, and a consumption entry was filed by the importer, appellee.

The paragraphs in question read:

PAR. 714. Horses and mules unless imported for immediate slaughter, valued at not more than $150 per head, $30 per head; valued at more than $150 per head, 20 per centum ad valorem.

PAR. 1747. [Free List.] Professional books, implements, instruments, and tools of trade, occupation, or employment in the actual possession of persons emigrating to the United States owned and used by them abroad; but this exemption shall not be construed to include machinery or other articles imported for use in any manufacturing establishment, or for any other person or persons, or for sale, nor shall it be construed to include theatrical scenery, properties, and apparel; but such articles brought by proprietors or managers of theatrical exhibitions arriving from abroad, for temporary use by them in such exhibitions, and not for any other person, and not for sale, and which have been used by them abroad, shall be admitted free of duty under such regulations as the Secretary of the Treasury may prescribe; but bonds shall be given for the payment to the United States of such duties as may be imposed by law upon any and all such articles as shall not be exported within six months after such importation: *Provided*, That the Secretary of the Treasury may, in his discretion, extend such period for a further term of six months in case application shall be made therefor.

It further appears from the record that appellee, a Frenchman, neither understood nor spoke English very well; that he requested an employee of the American Express Co. to prepare the consumption entry, instructing him to enter one of the horses at 5,000 francs and the other at 2,000 francs; that, because of a misunderstanding, the horses were entered, one at $5,000 and the other at $2,000, and were appraised at the entered values.

The horses having been appraised by the local appraiser at their entered values, the importer did not appeal for reappraisement.

On the trial below, counsel for the parties entered into the following stipulation:

It is hereby stipulated and agreed by and between the attorneys for the parties hereto, that, under the direction and supervision of the Assistant Appraiser, the two horses the subject of this protest were viewed and inspected by Richard J. Keeler, an Examiner's Assistant; that said Examiner's Assistant reported his findings to the Examiner; that the Examiner reported them to the Assistant Appraiser; that the appraisement was based upon such findings and reports; that the Examiner, William R. Crompton, did not personally see the horses, and that no Examiner or Assistant Appraiser viewed the horses.

It is stated in the brief of counsel for the Government, among other things, that—

The fundamental question presented by this case is whether the appraisement of the instant merchandise is void *and the liquidation is illegal* because the chattels in question, two circus horses, were not viewed in person either by the appraiser or the examiner. The horses were actually seen only by the examiner's clerk,

who reported the results of his inspection in writing to the examiner. [Italics not quoted.]

It is further stated in the brief of counsel for the Government that implicit in the fundamental question presented is whether section 500 (e) of the Tariff Act of 1930, which defines the duties of an examiner of merchandise, is "so mandatory in character that a departure therefrom in the case at bar renders the appraisement void, or whether said provision of law is directory only and for the guidance of governmental officials."

Section 500 of the Tariff Act of 1930, which sets forth the duties of appraising officers, reads:

SEC. 500. DUTIES OF APPRAISING OFFICERS.

(a) APPRAISER.—It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(2) To ascertain the number of yards, parcels, or quantities of the merchandise ordered or designated for examination;

(3) To ascertain whether the merchandise has been truly and correctly invoiced;

(4) To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5) To report his decisions to the collector.

(b) REPORTS OF APPRAISER'S SUBORDINATES.—The appraiser shall have power to review, revise, and correct the reports of his subordinate officers.

(c) CHIEF ASSISTANT AND DEPUTY APPRAISERS.—The duties of the chief assistant appraiser and deputy appraisers shall be prescribed by the Secretary of the Treasury. During the absence or disability of the appraiser, or in the event that there is no appraiser, the chief assistant appraiser shall exercise the powers and perform the duties of the appraiser.

(d) ASSISTANT APPRAISERS.—It shall be the duty of an assistant appraiser—

(1) To examine and inspect such merchandise as the appraiser may direct, and to report to him the value thereof;

(2) To revise and correct the reports and to supervise and direct the work of such examiners and other employees as the appraiser may designate; and

(3) To assist the appraiser, under such regulations as the Secretary of the Treasury or the appraiser may prescribe.

(e) EXAMINERS.—It shall be the duty of an examiner to examine and inspect the merchandise and report the value and such other facts as the appraiser may require in his appraisement or report, and to perform such other duties as may be prescribed by rules and regulations of the Secretary of the Treasury or the appraiser.

(f) ACTING APPRAISER.—The Secretary of the Treasury is authorized to designate an officer of the customs as acting appraiser at a port where there is no appraiser. Such acting appraiser shall take the oath, perform all the duties, and possess all the powers of an appraiser. The Secretary of the Treasury may appoint an officer of the customs who shall perform the functions of acting appraiser during the absence or disability of such acting appraiser.

It is apparent from the quoted provisions that an appraiser may, if he sees fit to do so, examine and inspect imported merchandise,

and that assistant appraisers may, and in some instances are required to, examine and inspect imported merchandise.

The duties of an examiner, so far as the examination and inspection of imported merchandise is concerned, are set forth in section 500 (e), *supra*, in no uncertain terms. It is provided therein that it "shall be the duty of the examiner *to examine and inspect*" merchandise, and to report the value of such merchandise and such other facts as may be necessary for a proper appraisement thereof. [Italics ours.] It is also provided therein that the examiner shall perform such other duties as may be prescribed by the Secretary of the Treasury or the appraiser.

Article 1386 of the Customs Regulations, 1937, which defines the duties of examiners, is identical with section 500 (e), *supra*.

Section 502 (a) of the Tariff Act of 1930 provides that—

\* \* \*. The Secretary of the Treasury shall establish and promulgate such rules and regulations not inconsistent with the law, and may disseminate such information as may be necessary to secure a just, impartial, and uniform appraisement of imported merchandise and the classification and assessment of duties thereon at the various ports of entry, *and may direct any appraiser, deputy appraiser, assistant appraiser, or examiner of merchandise to go from one port of entry to another for the purpose of appraising or assisting in appraising merchandise imported at such port.* [Italics ours.]

Article 423 of the Customs Regulations, 1937, provides, among other things, that customs inspectors may, without calling an examiner, examine and pass certain articles, including baggage, of residents and nonresidents arriving in the United States. However, subsection (d) of that article provides that if the value of articles acquired by a resident of the United States returning from abroad exceeds $100 "or, if the inspector is in doubt as to the character of any article, an examiner should be called."

Article 1339 of the Customs Regulations, 1937, provides that experienced customs inspectors may be designated as acting examiners under the direction of an appraiser for the purpose of examining certain bulky merchandise which is free of duty, or merchandise which is "subject to a specific rate of duty, or to a duty not dependent on value, provided chemical analysis or technical inspection is not required, and making report of their examination to the appraiser."

It is evident from the provisions of sections 500 and 502, *supra*, and the customs regulations, hereinbefore referred to, that an examiner is not required to examine and inspect all imported merchandise. However, when an examiner, who, as is well known, is an expert in his line, is called upon to examine and inspect imported merchandise and report the value of such merchandise and such other facts appertaining thereto as may be necessary for a proper appraisement, we think it is clear from the provisions of section 500 (e), *supra*, that it is the mandatory duty of such examiner to make a personal examination and in-

spection of such merchandise. We hold, therefore, that, to that extent, section 500 (e), *supra*, is not merely directory but is mandatory.

In the instant case, the appraisement was based upon the report of the examiner. The examiner did not examine or inspect the horses in question, but, in making his report, relied upon the report of an examination and inspection of the horses made by his assistant or clerk.

We are of opinion, therefore, as was the trial court, that the appraisement in the instant case, based, as it was, upon the report of an examiner who failed to examine and inspect the merchandise, is illegal and void, and that the liquidation of the entry by the collector upon such an appraisement is likewise illegal and void.

Relative to that portion of the judgment which holds that appellee should be "allowed to amend his entry inasmuch as neither the merchandise nor the invoice was lawfully under the observation of the appraiser for the purpose of appraisement," it is sufficient to say that such holding is surplusage because not responsive to the issue presented by appellee's protest, and, obviously, was not intended to be binding upon the customs officials. The trial court, of course, was fully aware of the fact that the right of appellee to amend his entry is controlled by section 487 of the Tariff Act of 1930, which provides that an entry, such as that at bar, may, "under such regulations as the Secretary of the Treasury may prescribe, at the time the entry is made, *or at any time before the invoice or the merchandise has come under the observation of the appraiser for the purpose of appraisement,*" be amended in the manner therein set forth. [Italics ours.]

For the reasons stated, the judgment of the trial court, which, as hereinbefore construed, holds that the collector's assessment of duty against the involved merchandise was illegal and void because it was based upon an illegal and void appraisement, is *affirmed*.